IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |  |
|---|---|---|
| JERRY RANGEL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-2208 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas lawsuit challenging his conviction for aggravated sexual assault of a child. Respondent filed a motion for summary judgment. (Docket Entry No. 17). The Court served petitioner a copy of the motion at his address on record on February 19, 2019. Despite expiration of a reasonable period of time in excess of eighty-five days, petitioner failed to file a response to the motion, and the motion is uncontested.

Having considered the motion, the pleadings, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this lawsuit for the reasons explained below.

*Background and Claims*

Petitioner was convicted of aggravated sexual assault of a child in 2007 and sentenced to life imprisonment. The conviction was affirmed on appeal in 2009, *Rangel v. State*, No.

10-07-00247-CR, 2009 WL 540780 (Tex. App.—Waco 2009, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review on June 3, 2009. Petitioner's petition for writ of certiorari was denied by the United States Supreme Court on October 13, 2009. *Rangel v. Texas*, 558 U.S. 952 (2009).

Petitioner's application for state habeas relief, filed with the state trial court in September 2010, was denied by the Texas Court of Criminal Appeals on June 13, 2018. Petitioner filed the instant federal habeas petition no earlier than June 25, 2018. Despite the passage of eleven years between petitioner's conviction and his instant petition, this federal petition appears timely filed.

Petitioner raises the following grounds for federal habeas relief:

(1) His confrontation rights were violated because a DNA analyst testified and read directly from a lab report prepared by a different DNA analyst.

(2) Trial counsel was ineffective in failing to

    (a) investigate and object to evidence of a diaper and trash;

    (b) object to irrelevant physical evidence of petitioner's shirt and pants; and

    (c) object to the prosecutor's improper closing arguments.

(3) The State failed to disclose or give proper notice of its blood splatter expert witness.

Respondent argues that petitioner's claims should be summarily dismissed as they are without merit.

## *Factual Background*

The intermediate state court of appeals set forth the following statements of fact in its opinion affirming petitioner's conviction:

> Inez, the grandmother of 13–month–old E.A., [the female complainant], and the person paying the apartment's rent, found her in the early afternoon on a bed naked, unconscious, and bleeding vaginally. Rangel, who stayed overnight in the apartment a couple of nights a week with E.A.'s mother, was asleep on the bedroom floor with his belt buckle undone after being out all night with E.A.'s mother, whom Inez had taken to work early that morning. Inez relayed that information to her employer, who relayed it to the police just before they entered the apartment and found Rangel still asleep.
>
> * * * *
>
> [Inez] woke Rangel up and asked him what he had done. Rangel told [Inez] that he had not done anything and he "passed out" asleep.
>
> [Inez] stated that she picked the victim up and drove to St. Joseph Hospital for medical treatment. When she arrived at the scene she told the medical staff there what had happened and one of the nurses in the emergency room called 911. Detective Loup learned from medical personnel that the victim had trauma and bleeding to her vagina, her left leg was broken, she had a fractured skull, and bruising to her face, foot, and hand. The victim was treated and later taken to Scott White Hospital in Temple Texas by Life–Flight.
>
> * * * *
>
> The jury heard that Inez found E.A. on the bed, bleeding and unconscious, with Rangel asleep on the floor with his belt unbuckled, zipper down, and the front of his pants wet. Blood on Rangel's pants belonged to E.A., and DNA on a diaper suspiciously discovered the next day in the same bedroom belonged to both E.A. and Rangel. E.A. suffered severe injuries, including multiple bruises and abrasions, multiple skull fractures, a fractured femur, and a vaginal laceration. In his post-arrest statement to Detective Loup, Rangel admitted to drinking beer and ingesting cocaine the night before.

*Rangel*, at *2–5.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment Review*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Right of Confrontation*

Petitioner contends that he was denied his constitutional confrontation rights when the State's DNA expert witness, Judy Koehler, was allowed to testify from a forensic lab report prepared by another expert, Cecile Boyette. Specifically, petitioner complains that Koehler presented the following testimony during the State's case-in-chief:

> As I stated previously, apparent blood was detected on Item 28, the jeans. DNA analysis was also conducted on Item 28, one of the stains that was collected, and reading directly from Ms. Boyette's, report: The DNA profile for Item 28, the jeans, Stain A is consistent with a mixture. Esmeralda

6

> Alvarado cannot be excluded as a contributor of the major component in the profile. And statistics are available upon written request. Jerry Rangel and David Cruz are excluded [sic] as contributors to Item 28, the jeans, Stain A.
>
> \* \* \* \*
>
> I'm going to read from the report. The DNA profile from Item 16, the diaper, Stain A is consistent with a mixture from Esmeralda Alvarado and Jerry Rangel. Jerry Rangel cannot be excluded as a contributor to the stain. The probability of selecting an unrelated person at random who could be a contributor to Item 16, the diaper Stain A, is approximately 1 in 21.42 million for Caucasians; 1 in 53.28 million for [Blacks]; and 1 in 13.64 million for Hispanics. David Cruz is excluded as a contributor to Item 16, the diaper Stain A.

4 RR 28–29, 31.

As an initial observation, the Court notes that trial counsel raised no objections to the testimony, and any error was not preserved for appeal pursuant to the state contemporaneous objection rule. *See* TEX. R. APP. PROC. 33.1. Nor did petitioner raise the issue on direct appeal. Federal courts may not review a habeas claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). *See also Coleman v. Thompson*, 501 U.S. 722, 729–730, (1991). However, the state courts on direct and collateral review made no express findings of fact or conclusions or law, thus the procedural default and bar rules recognized by *Coleman* and *Roberts* are inapplicable in this instance. Accordingly, the Court will review petitioner's confrontation claim on the merits.

Although petitioner does not frame his confrontation claim in context of ineffective assistance of counsel, trial counsel submitted an affidavit on state habeas review wherein he testified as follows:

> Applicant complains that his right to confront and cross examine witnesses was violated when Judy Koehler, D.P.S. DNA expert, was allowed to testify. Applicant complains that Koehler was allowed to testify from a report prepared by another expert, Cecile Boyette. Defense was given notice of the State's intent to call Judy Koehler. Defense requested and was given a copy of the complete DNA analysis done by Boyette. Defense hired an expert witness, Dr. Robert Benjamin to examine the complete report and testify at trial. I spent four days consulting with Dr. Benjamin during the trial regarding the report prepared by Boyette. Dr. Benjamin could find no improper analysis or procedure in Boyette's report.
>
> Under *Crawford v. Washington*, 541 U.S. 36 (2004), "testimonial" statements are not admissible unless the witness takes the stand and is subject to cross-examination. This case was tried in July 2007, and *Crawford* applied. However, case law at the time of the 2007 trial was that a DNA report was *not* "testimonial" and thus not a violation of *Crawford* (see *Campos v. State*, 256 S.W.3d 757, 762 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd)). Objection to Koehler's testimony would have been meritless, and failure to make a meritless objection will not support a claim of ineffective assistance of counsel.

*Ex parte Rangel*, at 1211–12 (original emphasis) (Docket Entry No. 16-12, pp. 217–18). The Texas Court of Criminal Appeals denied habeas relief without a hearing or written order.

Under the Sixth Amendment's Confrontation Clause, the State may not introduce a testimonial hearsay statement unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant. *See Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011); *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

8

Because the confrontation issue was not raised below, the state courts were not called upon the address these or any other relevant factors.

Trial counsel's affidavit, above, recounted the applicable state law as it stood at the time of petitioner's trial: a DNA report was non-testimonial, and the right to confrontation was not violated by a DNA chemist's testifying from a DNA report that he or she did not author. *See Campos v. State*, 256 S.W.3d 757, 762, 765 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd) ("Because we conclude the DNA report was non-testimonial and because appellant had an opportunity to cross examine [the non-authoring witness] regarding her opinions about the report, we find no Confrontation Clause violation."). *Campos* was a published decision; however, it relied in part on an earlier unpublished decision, *Johnson v. State*, No. 05–05–00848–CR, 2006 WL 1738288 (Tex. App.– Dallas June 27, 2006, pet. ref'd), which reached a similar conclusion. Petitioner does not establish that, at the time of his trial, Koehler's testimony was clearly established by federal law or the Supreme Court as "testimonial" and inadmissible for purposes of the Confrontation Clause.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687. The failure to demonstrate deficient performance or prejudice is fatal to a *Strickland* claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

The Supreme Court recently emphasized in *Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's limitations:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (internal quotation omitted).

In the context of reviewing claims of ineffective assistance, the Supreme Court and Fifth Circuit have directed federal habeas courts to exercise great caution to avoid the distorting effects of hindsight. *See Premo v. Moore*, 562 U.S. 115 (2011) ("In determining

11

how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."); *Bell v. Cone*, 535 U.S. 685, 698 (2002) (confirming that judicial scrutiny of a counsel's performance must be highly deferential and that every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time). These same standards apply to claims against trial counsel and appellate counsel alike.

Where, as here, the state trial court did not make express findings of fact or conclusions of law and the Texas Court of Criminal Appeals denied relief without a written opinion, the usual AEDPA standards apply. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). In such a situation, the Court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Id*.

Therefore, this Court must presume that in denying relief without a written order, the Texas Court of Criminal Appeals was aware of and applied the *Strickland* standards.

Petitioner claims that trial counsel was ineffective in the following particulars.

*Failure to Investigate and Object*

Petitioner argues that trial counsel was ineffective in failing to investigate and object to evidence of a bloody diaper, pants, and shirt that were located in the room where the

victim had been found. The complained-of pants were found in a closet, and were not the jeans petitioner was wearing at the time of his arrest.

In his affidavit submitted to the state trial court on collateral review, defense counsel responded to petitioner's claim as follows:

> [Petitioner] complains that he did not receive effective assistance of counsel because trial counsel failed to investigate the client file and use important information to cross-examine officer Leslie Poe and challenge the State's Exhibit #63, the diaper recovered from a trash can at the crime scene.
>
> Exhibit #63 was a diaper recovered on March 7, 2006, the day after the crime was reported. There are four diapers mentioned in this case. The first was the diaper that was placed on the victim after she was found by her mother. This diaper was taken to the hospital with the victim. It was collected as evidence and included in the "Rape Kit" sent to DPS labs by the hospital staff. It contained a pubic hair of unknown origin. The next three diapers were found in the trash can in the room where the victim was found. They were not collected because the investigators determined they had been there for a while and were of no evidentiary value. The fourth diaper was introduced as State's Exhibit #63. It was recovered on March 7, 2006, when the victim's mother called police to tell them there was more evidence in the room. When police arrived, they were shown a dent in the wall and blood spatters. The victim's mother then showed them a diaper sitting on the dresser. She said she recovered it from under the same bed the victim was found lying on. Investigators stated they had searched under the bed the day before and saw no diaper. This discrepancy was never resolved in any reports or at trial. This fourth diaper was the diaper that contained a mixture of the victim's blood and [petitioner's] blood.
>
> All of the above information was known to me prior to trial. I consulted Dr. Benjamin regarding the analysis of the blood found on the fourth diaper (State's Exhibit #63). I also had the assistance of [co-counsel] in determining how to deal with this piece of evidence at trial. It was never determined why this diaper was not found until the next day.
>
> [Petitioner] complains that I failed to object to irrelevant and prejudicial physical evidence and testimony about that evidence. [Petitioner] complains

> about the introduction of bloodstained khaki colored pants and a bloodstained shirt found in the closet of the same room where the victim was found.
>
> The room where these items were found belonged to [petitioner] and was also shared by the victim's mother. [Petitioner] complains that these items were irrelevant and prejudicial. [Petitioner] had previously used this room for tattooing and it was known that his blood would be found in numerous places in the room. It was also known that the blood of other people would be found in the room as a result of [petitioner's] tattooing practices. The bloody pants and shirt were not harmful to our case as they were not linked to the victim. I doubt that an objection on relevance would have been sustained since the State was allowed to introduce evidence of other items found in the room which may or may not have had any relevance to the crime.

*Ex parte Rangel*, at 1212–1214 (Docket Entry No. 16-12, pp. 218–220). The Texas Court of Criminal Appeals denied habeas relief, impliedly determining that trial counsel did not provide ineffective assistance of counsel under *Strickland*. *Id.*, at cover.

To prevail on a claim for failure to investigate, a habeas petitioner "must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). In the instant case, petitioner makes only a conclusory allegation that counsel failed to adequately investigate his case. Petitioner establishes neither deficient performance nor prejudice under *Strickland*, and habeas relief is unwarranted on his claim for failure to investigate.

Similarly, petitioner fails to show that counsel was ineffective in not objecting to evidence of the diaper, pants, and shirt. As counsel explained in his affidavit above, the diaper was found in a room occupied by petitioner and under the bed where the victim had

14

been found. The diaper contained a mixture of petitioner and the victim's blood. The jury heard evidence that police investigators had checked under the bed earlier and did not find a diaper. Petitioner proffers no meritorious state law ground under which this item would have been excluded had counsel objected. Counsel is not constitutionally deficient in failing to raise frivolous or meritless arguments or objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998); *McCoy v. Lynaugh*, 874 F.2d 954, 963 (5th Cir. 1989).

Moreover, petitioner fails to show that admission of the pants and shirt harmed his defense. The blood found on these particular items of clothing was petitioner's blood only, and did not contain the victim's blood. As stated by counsel in his affidavit, the clothing was not inculpatory and did not harm petitioner's defense. Even assuming trial counsel should have objected to admission of these items, petitioner does not establish, and the record does not evince, actual prejudice under *Strickland*.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

*Failure to Object to State's Closing Argument*

Petitioner complains that trial counsel failed to object to improper statements made by the prosecution during closing argument statements. Defense counsel addressed petitioner's claim in his affidavit submitted to the state trial court on collateral review:

> [Rangel] complains that trial counsel failed to object to improper inflammatory closing arguments by the State. [Rangel] mentions the fact that David Cruz was present in the courtroom during the trial and was available as a witness for the defense. David Cruz was allegedly asleep in another room when the crime occurred. I did not call David Cruz because any evidence that would make him an alternate suspect was not admissible at trial. I was aware prior to trial that David Cruz had been adjudicated as a juvenile of a sexual assault and had been required to register as a sex offender while on juvenile probation for the offense. I also knew that this information was prohibited by the rules of evidence from being introduced at trial. If I did call Cruz as a witness, I had nothing that I could use before the jury to paint him as suspect. The prosecutor called David Cruz as a witness, and Cruz was thoroughly cross-examined by the defense.
>
> [Rangel] complains about other statements made during the State's closing argument as being improper and inflammatory. The statements did not appear to be "outside the record" and appeared to be asking the jury to draw inferences from the evidence presented at trial. I don't believe there were any statements or arguments by the State during closing arguments that were legally objectionable.

Defense co-counsel further addressed petitioner's claim in his own affidavit:

> [Petitioner] alleges that defense counsel failed to "object to improper and inflammatory closing arguments by the State in violation of the Sixth Amendment." Since it was my assignment to object to any improper closing argument, I will address this issue. None of the arguments made by the State and cited in [petitioner's] writ were objectionable. All of the arguments referenced by [petitioner] were within the bounds of accepted jury argument and, therefore, proper. In my career as a criminal defense lawyer, I have never been reticent to object to improper jury argument by the State and I did so in this case—just not in the areas [petitioner] cites.

*Ex parte Rangel*, at 1214–15 (Docket Entry No. 16-12, pp. 221–22). The Texas Court of Criminal Appeals denied habeas relief, impliedly determining that trial counsel did not provide ineffective assistance of counsel under *Strickland*. *Id.*, at cover.

16

To prevail on his claim, petitioner must show that, but for counsel's failure to object to the State's closing argument, there is a reasonable probability that the result of the trial would have been different. This, he fails to do. Petitioner does not establish that, had counsel raised the objections, the objections would have been granted or their denial would have constituted reversible error. Nor does petitioner establish that counsel's trial strategy as set forth in his affidavit was unreasonable. Petitioner's conclusory assertions of ineffective assistance are unsupported in the record, and are insufficient to meet his burdens of proof under *Strickland* and the AEDPA standards. Habeas relief is unwarranted.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

### *Inadequate Notice of State's Expert Witness*

Petitioner claims prosecutorial misconduct in the State's failure to provide him proper notice of its intent to present a blood spatter expert witness. He argues that, under the Texas Code of Criminal Procedure and Texas Rules of Evidence, he was entitled to thirty days' notice of the State's intent to introduce expert witness testimony.

As correctly argued by the State, errors of state law are not cognizable under federal habeas review and, even if the complained-of conduct was improper under state law, any error was not so egregious or prejudicial as to rise to a federal constitutional violation. *See*

*Thomas v. Lynaugh*, 812 F.2d 225, 230–31 (5th Cir. 1987). Petitioner cites no applicable authority showing that he had a federal or constitutional right to notice of the State's intent to present an expert witness at trial. Moreover, he fails to show that any alleged lack of notice under state law constituted error so egregious or prejudicial as to raise a federal constitutional violation.

Regardless, under the relevant state statutory provisions, a party is entitled to thirty days' notice of a party's intent to introduce expert witness testimony *only* if the party requested notice. *See* TEX. CODE CRIM. PROC. Art. 39.14(b) (only requiring notice of expert witness upon request thirty days prior to the date that jury selection in the trial is scheduled to begin) and TEX. R. EVID. 705 (same). In petitioner's case, neither the State nor defense counsel requested notice.

In his affidavit submitted to the state trial court on collateral review, defense counsel testified as follows:

> [Petitioner] complains that the testimony of officer J.J. Jones as a blood spatter expert without giving notice [*sic*] violated his Constitutional rights.
>
> Officer Jones was called back out to the crime scene the next day by the victim's mother. It was then that she pointed out the dent in the wall and the blood spatter on the wall. Neither the State nor the Defense filed a request for notice of expert witnesses prior to trial. Because of this, any person who is qualified by the Court to testify as an expert may do so without prior notice. It is normally my practice to not request notice of experts because doing so will normally cause the State to make a reciprocal request of the Defense. I do not like to be limited by such a request if I can avoid it. This was my trial strategy. It allowed me to have Dr. Benjamin testify about "Trace Evidence" regarding the pubic hair found in the diaper submitted with the "Rape Kit" although he had originally been called only as a DNA expert. I do not believe

the expert testimony regarding blood spatter analysis tended to implicate [petitioner] over anyone else as the person who committed the crime.

*Ex parte Rangel*, at 1215–16 (Docket Entry No. 16-12, pp. 221–22).

Because defense counsel as a matter of trial strategy did not request thirty days' notice from the State, the State was not required to provide such notice. No prosecutorial misconduct is shown.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## *Conclusion*

The motion for summary judgment (Docket Entry No. 17) is GRANTED and this habeas lawsuit is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas, on June 28, 2019.

Gray H. Miller
Senior United States District Judge